E-FILED

Monday, 22 September, 2008  02:53:41 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DAVID VIDA,
　　Plaintiff,

　　vs.　　　　　　　　　　　　　　No. 07-1158

ROGER WALKER, et al.,
　　Defendants.

SUMMARY JUDGEMENT ORDER

　　This cause is before the court for consideration of the plaintiff's motion for partial summary judgement [d/e 16] and the defendants motion for summary judgement. [d/e 24]

I. BACKGROUND

　　The plaintiff, David Vida, filed his complaint pursuant to 42 U.S.C. §1983 claiming that his constitutional rights were violated at the Pontiac Correctional Center.  On July 20, 2007, the court conducted a merit review of the plaintiff's complaint and found that he had alleged the following claims:

　　a) Defendants Illinois Department of Corrections Director Roger Walker and Adjustment Committee Chairmen Robert Ellinger violated the plaintiff's equal protection rights when the plaintiff was not given credit for time spent in segregation prior to a final disciplinary hearing and other similarly situated inmates were given credit for time this time on investigative status.

　　b) Defendant Food Service Supervisor Paul Meyer violated the plaintiff's Eighth Amendment rights when he failed to protect the plaintiff from attack by another inmate on July 28, 2005.  *See* June 20, 2007 Case Management Order.

The claims are against the defendants in their individual capacities.

II.  FACTS

　　The following facts are taken from the dispositive motions and the attached exhibits:

　　Robert Ellinger is a Lieutenant at Pontiac Correctional Center and has served as Chairperson of the Adjustment Committee. (Def. Memo, Ex. A, Ellinger Aff, p. 1).

　　The Adjustment Committees Rules are cited in the Illinois Administrative Code and outlined in a Illinois Department of Corrections Rule. *See* 20 Ill. Admin.Code 504.80;  I.D.O.C.

Rule 504.80.  The Adjustment Committee considers disciplinary tickets alleging rule violations against inmates.  The committee is to consider relevant information before deciding whether it believes an inmate committed the alleged offense.  (Def. Memo, Ex. A, Ellinger Aff, p. 1-2).  The Committee members then must put their findings in writing and state the basis for their decision. (Def. Memo, Ex. A, Ellinger Aff, p. 2)

If the inmate is found guilty of some or all of the charged offenses, the Committee members recommend specific disciplinary actions.  The information is contained in the Adjustment Committee Summary, which is signed by each Committee member.  (Def. Memo, Ex. A, Ellinger Aff, p. 2)

The Disciplinary Report and Adjustment Committee Summary are then forwarded to the Chief Administrative Officer or his designee for review and approval.  Once approved, the inmate is provided with a copy.

Ellinger says committee members who hear a specific ticket, "play no role in the actual enforcement of the punishment recommended." (Def. Memo, Ex. A, Ellinger Aff, p. 2).

On July 28, 2005, the plaintiff received a disciplinary ticket accusing him of fighting with another inmate.  Ellinger was the chairperson of the Adjustment Committee which considered the ticket on August 2, 2005.  Ellinger says the Committee referred the matter to Internal Affairs for further investigation.  On September 1, 2005, the Committee reviewed the investigation and found the plaintiff guilty of fighting.   The Committee recommended that the plaintiff be placed in segregation, demoted to C grade status and lose privileges.  All discipline was recommended for 30 days.   The Chief Administrative Officer agreed with the recommendation on September 6, 2005. (Def. Memo, Ex. A, Ellinger Aff, p. 2-3).

The plaintiff says he entered Segregation on July 28, 2005.  He went to investigative status after the first Adjustment Committee hearing.  On September 1, 2005, the Committee recommended one month in segregation.  On September 7, 2005, the plaintiff was released from segregation. (Plain Mot., p. 1-2).  Therefore, the plaintiff says he spent 42 days in segregation which includes 12 days beyond the recommended punishment.

The plaintiff filed a grievance on October 11, 2005, marked "staff conduct." (Plain. Mot, Ex. A-1).  The three page grievance reviews the plaintiff's history with the Adjustment Committee and the Internal Affairs Committee and alleges that the plaintiff's due process and equal protection rights were violated when he stayed in segregation longer than was recommended by the Committee.  (Plain. Mot, Ex. A-1).  There is no mention in the grievance of Food Service Supervisor Paul Meyer or that he failed to take steps to prevent a fight.  The Chairperson of the Office of Inmate Issues says the plaintiff has not timely appealed a grievance to the board concerning a failure to protect claim. (Def. Memo, Ex. C, Benton Aff, p. 3)

On November 30, 3005, the Administrative Review Board reviewed the plaintiff's

grievance.  It note that between the first Adjustment Committee hearing on the ticket and the second hearing after the Internal Affairs investigation was complete, "the original report was ***not*** rewritten, only a report of findings by the I/A was provided to the Adjustment Committee." (Plain Memo, Ex.A-3).   Therefore, the board agreed on a mixed ruling:

> With regards to the disciplinary report, this office recommends this portion
> of the grievance be affirmed and the above disciplinary report expunged
> from the offender's masterfile due to non-compliance with Department
> Rule 504.30 (not fully substantiated in report).  With regards to the
> issue of extra segregation time, this office recommends this portion of
> the grievance be denied, as it appears all time was accounted for due
> to placement in Investigative Status. (Plain Memo, Ex.A-3).

This letter purports to be signed by Administrative Review Board Member Sherry Benton and Illinois Department of Corrections Director Roger Walker.   However, Board Supervisor Terri Anderson says she signed Director Walker's name as his designee.  (Def. Memo, Ex. B, Anderson Aff, p. 1)    Anderson says the Director was not consulted nor was he involved with the plaintiff's grievance.  Walker informed the plaintiff that it was a designee who signed the grievance in response to Interrogatories in February of 2008.  (Plain Memo, Ex. D).   Walker did not provide the plaintiff with the name of that designee.

Ellinger says as a member of the Adjustment Committee, he was not involved in calculating the dates of the plaintiff's sentence or calculating any credit for time already served on investigative status. (Def. Memo, Ex A, Ellinger Aff, p. 2).


### III.  LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.  Any discrepancies in the factual record should be evaluated in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000).  A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial."  *See* Fed. R. Civ. P. 56(e).  In order to be a

"genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence."  Fed. R. Civ. P. 56(e) (emphasis added).  Personal knowledge may include inferences and opinions drawn from those facts.  *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).  "But the inferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience."  *Visser*, 924 F.2d at 659.

## IV. ANALYSIS

### A. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

The defendants argue that the plaintiff failed to exhaust his administrative remedies for any claims against Defendant Meyer for failure to protect.   The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.  42 U.S.C. §1997e(a).

The defendants state that while the plaintiff did file a grievance concerning the length of time he spent in segregation, he did not file a grievance concerning a failure to protect claim.  The plaintiff apparently does not disagree.  However, the plaintiff says he was not required to exhaust in this case because no administrative remedies are available in cases concerning an assault.

The plaintiff is incorrect. " [E]xhaustion is required even if the prison's administrative process is incapable of giving the inmate the kind of remedial measure he or she has requested–in particular, monetary damages." *Larkin v Galloway,* 266 F.3d 718, 722 (7th Cir. 2001) *citing Booth v. Churner,* 532 U.S. 731 (2001) The relevant inquiry is whether the administrative procedures have the "authority to take some action in response to the complaint." *Booth,* 532 U.S. at 736. The defendants' motion for summary judgment on the claims against Defendant Meyer is granted.

### B.  DEFENDANTS ELLINGER AND WALKER

The defendants argue that Defendants Walker and Ellinger are not personally responsible for the plaintiff's equal protection claim.  A defendant cannot be held liable under 42 USC §1983 unless the plaintiffs can demonstrate that the defendant caused or participated in the alleged constitutional violation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982).  For a supervisor to

be held liable under 42 U.S.C. § 1983, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. . ." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

The defendants state that a designee of Defendant Walker's signed the denial of his grievance and that Defendant Walker was not involved with the plaintiff's case in any way.  The plaintiff argues that Defendant Walker did not have authority to use a designee.  The plaintiff is incorrect.  Given the large numbers of inmates and paperwork involved in the Illinois Department of Corrections, the Illinois Administrative Code allows the Director to delegate duties and allow a designee to handle some responsibilities. *See* 20 Ill. Admin Code 503. 805(a).

The court notes that the defendants did inform the plaintiff in February of 2008 that a designee had signed Defendant Walker's name. (Plain. Mot, Ex. D, Walker Int., Answer #5).  The defendants should also have provided the name of this designee, but did not.  Nonetheless, the plaintiff also has some responsibility for actively pursuing his own litigation and asking for the name of the designee once he knew Defendant Walker did not sign the document.   The court notes that even if Defendant Walker had signed the denial of his grievance, there is no evidence that Defendant Walker had knowledge that the plaintiff was treated differently from other inmates or that Defendant Walker had some part in a decision to impose additional segregation time.

Defendant Ellinger states that he was not responsible for imposing Administrative Review Board discipline, nor for calculating time in segregation.  His job on the board is to review disciplinary charges, determine if additional information is needed and then recommend appropriate punishment.

The plaintiff claims the Illinois Department of Corrections Rules make Defendant Ellinger personally responsible for calculating segregation time.  However, the rule cited by the plaintiff states that a prisoner shall receive credit against segregation time for time on investigatory status. *See* 20 Ill. Admin. Code 504.120(a).  It does not state who is responsible for making that calculation and plaintiff has presented no other evidence that Defendant Ellinger was involved or responsible for the calculation of time served in segregation.

The plaintiff has failed to provide any evidence that Defendant Walker or Defendant Ellinger were personally involved or have any liability for his claims.  The motion for summary judgement as to these two defendants is granted.

**ITS IS THEREFORE ORDERED that:**

**1) The plaintiff's motion for summary judgement is denied. [d/e 16]**

**2) The defendant's motion for summary judgement  is granted pursuant to  Fed. R. Civ. P. 56. [d/e 24]   The clerk of the court is directed to enter judgment in favor of the defendants in accordance with this order.  The parties are to bear their own costs. This case is terminated.**

5

**3) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)©. If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**4) The agency having custody of the plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available. If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.**

**5) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such a change. Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.**

**6) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this _22nd_ day of September, 2008.


**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

6